In the Matter of THOMAS J. SPARGO, Respondent, v NEW YORK STATE COMMISSION ON GOVERNMENT INTEGRITY, Appellant, et al., Respondents.

Third Department, July 28, 1988

---

### APPEARANCES OF COUNSEL

*Andrew Schulz, Peter Bienstock* and *James M. McGuire* for appellant.

*DeGraff, Foy, Conway, Holt-Harris & Mealey (David F. Kunz* of counsel), for Thomas J. Spargo, respondent.

### OPINION OF THE COURT

MERCURE, J.

Respondent New York State Commission on Government Integrity (hereinafter the Commission) utilized its subpoena power to obtain the complete file of an investigation by respondent New York State Board of Elections (hereinafter the Board) into alleged improprieties surrounding the 1985 election of Republican Party members to the Town Board of the Town of Poughkeepsie, Dutchess County. The inquiry focused on campaign contributions by the Pyramid Companies, a Syracuse-based real estate development group, and affiliates to the New York State Republican Committee (hereinafter State Committee), the New York Republican Federal Campaign Committee (hereinafter Federal Committee) and a political committee called Building a Better New York (hereinafter BBNY). The Commission believes that petitioner was a

key participant in funneling Pyramid funds to Republican Town Board candidates by virtue of his roles as (1) counsel to Pyramid with regard to Election Law matters, (2) secretary and organizer of BBNY, (3) treasurer of the Federal Committee, and (4) counsel to the State Committee.

After determining that there were serious weaknesses in the State's campaign financing laws and that the Board's inquiry was inadequate, the Commission concluded that public airing of all relevant facts was required. Consequently, on January 12, 1988, the Commission announced that public hearings would be held on January 20 and 21, 1988 to explore the weaknesses. It is undisputed that the contents of the Board's investigative file was to be made public in connection with the hearings. On January 19, 1988, petitioner and BBNY commenced a CPLR article 78 proceeding against respondents and others to restrain them from publicly revealing the contents of the file or from disclosing it at any public hearings upon the ground that Public Officers Law article 6-A, known as the Personal Privacy Protection Law (hereinafter PPPL), prevented public disclosure of the file. Following the issuance of an order temporarily restraining the respondents in that proceeding from making public disclosure of the file, Supreme Court (Kahn, J.), rendered a written decision concluding that petitioner could not gain access to the file since it constituted a "public safety agency record" (see, Public Officers Law § 92 [8]; § 95 [7]), but that Public Officers Law § 96 (1) (n) authorized the transfer of the file from the Board to the Commission. Inexplicably, Supreme Court did not address the ultimate issue, whether the Commission was legally permitted to allow public access to the contents of the file. The judgment entered thereon dismissed the petition in all respects but made specific provision, allegedly at petitioner's request, that it made "no findings with respect to the public release of the * * * investigative file of the [Board]". Petitioner did not take an appeal from that judgment.

Petitioner then commenced this CPLR article 78 proceeding, as a "data subject" under Public officers Law § 92 (3), again seeking to restrain and prohibit the Commission from publicly disclosing the contents of the Board's file, allegedly in violation of the provisions of the PPPL. In its answer, the Commission contended, among other things, that the proceeding was barred by the doctrine of res judicata since the cause of action asserted is identical to that raised on the prior proceeding. After finding that res judicata did not bar the proceeding

because the judgment in the first proceeding "specifically left the issue [of the public release of the Board's file] for future litigation", Supreme Court determined that it was bound by the finding made in the first proceeding that petitioner was not entitled to access to the file, that the interagency transfer under Public Officers Law § 96 (1) (n) did not justify public release of the contents of the file and that it is "beyond the scope, authority, and jurisdiction of [the Commission] to intentionally publicly disclose, directly or indirectly the contents of the confidential criminal investigation file created by [the Board]". Nevertheless, Supreme Court decreed in the judgment that the Commission "may commence a motion on notice * * * for permission to publicly disclose portions of the * * * file". The Commission appeals.

■ Initially, Supreme Court erred in its finding that res judicata did not bar this proceeding. Clearly, both proceedings sought the same relief, to enjoin public disclosure of the investigative file, upon the same ground, that the PPPL barred such disclosure. The only difference, a minor one, is that while the first petition alleged generally that disclosure was prohibited by Public Officers Law § 96 (1), petitioner now relies specifically upon paragraph (n) thereof. This distinction is irrelevant since res judicata operates to bar any claim which "was viable at the time of [the] prior proceeding * * * regardless of whether [petitioner] actually raised it" *(Matter of McFerran v Board of Educ.,* 130 AD2d 886, *appeal dismissed* 70 NY2d 926; *see also, O'Brien v City of Syracuse,* 54 NY2d 353, 357; *Matter of Reilly v Reid,* 45 NY2d 24, 30).

Moreover, notwithstanding the recital in the first judgment that the court made no findings with respect to the public release of the investigative file, a review of Supreme Court's written decision in the first proceeding, incorporated in the judgment by reference, leaves no doubt that the merits of the application were addressed *(see,* CPLR 7804 [g], [h]) and resolved, with a determination that petitioner and BBNY were not entitled to the relief requested as a matter of law. "CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in order to be given *res judicata* effect; it suffices that it appears from the judgment that the dismissal was on the merits" *(Strange v Montefiore Hosp. & Med. Center,* 59 NY2d 737, 739).

■ In any event, were this second proceeding not barred by the doctrine of res judicata, the result would be no different as we also disagree with Supreme Court's conclusion that the

PPPL barred public disclosure of the contents of the Board's investigative file. In fact, the PPPL has no bearing on the issue of public access to the subject data because the file does not contain the type of records which the statute is intended to protect. The PPPL, like the Federal Privacy Act (5 USC § 522a), the Federal law upon which it was patterned, was enacted to protect against the increasing dangers to personal privacy posed by modern computerized data collection and retrieval systems. This purpose is evidenced by the Governor's memorandum approving the legislation, which stated that: "Technological advances of the last quarter century have greatly enhanced the ability of government to serve the people of New York State. Data systems and computer resources permit government to respond to people's needs much more efficiently and effectively than in the past. The government in accepting the benefits provided by these new technologies, must also accept the responsibility for their intelligent use. There is an inherent danger in permitting the unchecked use of high speed data systems which contain personal information about millions of New York State citizens" (Governor's mem, 1983 NY Legis Ann, at 285; *see also,* mem of Dept of Social Servs, July 28, 1983, Governor's Bill Jacket, L 1983, ch 652 [the "absence of such controls * * * enhances the potential for establishment of massive, computer linked personal data files which may exceed the legitimate requirements of government"]; Budget Report on Bills, July 14, 1983, Governor's Bill Jacket, L 1983, ch 652 [with "greater use of and access to computers within State agencies the potential for privacy violations heightens, thus adding to the need for comprehensive privacy protections"].)

Further indication that only records in an indexed computer database or the like are protected by the PPPL is found in the definitions of "record" as "any item, collection or grouping of personal information about a data subject *which is maintained and is retrievable by use of the name or other identifier* of the data subject" (Public Officers Law § 92 [9] [emphasis supplied]) and "personal information" as "any information concerning a data subject which, *because of name, number, symbol, mark or other identifier, can be used to identify that data subject"* (Public Officers Law § 92 [7] [emphasis supplied]). In direct contrast, the Freedom of Information Law (Public Officers Law art 6) (hereinafter FOIL), enacted for the purpose of facilitating, not restricting, public access to government records *(see,* Public Officers Law § 84), defines "record" in a far

broader and more traditional fashion as "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes" (Public Officers Law § 86 [4]). The records at issue in this case, manually compiled paper records, not electronically indexed in any fashion, do not permit retrieval under petitioner's name or other identifier. Therefore, while they do constitute records under FOIL, they are not records under the PPPL. For the same reason, references to petitioner in the files are not "personal information" *(see,* Public Officers Law § 92 [7]) and petitioner is not a "data subject" within the purview of the PPPL *(see,* Public Officers Law § 92 [3]).

Although no relevant cases are found under the PPPL, the very similar Federal Privacy Act has engendered some useful precedent on the issue. In *Baker v Department of Navy* (814 F2d 1381, *cert denied* — US —, 108 S Ct 450), the Ninth Circuit Court of Appeals found that in enacting the Federal Privacy Act, "Congress was primarily concerned with the potential misuse of personally identifiable information stored in computers" *(supra,* at 1384). Consequently, the Federal Privacy Act was designed "to grant individuals access to those records that federal agencies could retrieve through their computer systems via personal identifiers" *(supra,* at 1384). Since the agency's report was not retrievable under the petitioner's name or other personal identifier, it was not accessible under the Federal Privacy Act and the petitioner was not permitted to invoke the remedies of that act *(supra).* Likewise, in *Boyd v Secretary of Navy* (709 F2d 684, *cert denied* 464 US 1043), the 11th Circuit Court of Appeals held that "the purpose behind the Privacy Act [is] protecting information from being gathered through computers or other sophisticated technological equipment" *(supra,* at 687).

Since, in our view, the petition was barred by res judicata and was meritless,* the judgment must be reversed and the petition dismissed.

MAHONEY, P. J. (concurring). In my view, this proceeding is

---

* The petition in this case is solely grounded upon the PPPL, which we have found inapplicable. However, we express no opinion on any other ground upon which relief could have been requested.

not barred by the doctrine of res judicata. Despite the fact that the issue of public access to the file was clearly raised in the first CPLR article 78 proceeding and was discussed by Supreme Court in its decision, the resulting judgment expressly stated that it was making "no findings with respect to the public release of [the Board's] investigative file". It is hard to imagine a clearer statement of what issue was not decided in that proceeding. The language of the judgment controls over that of the decision, and if the Commission was of the view that such judgment did not conform to the decision, it should have moved before Supreme Court to resettle the judgment. Petitioner should not be denied an opportunity to have this claim determined on the merits because of an inconsistency in the decision and judgment of the prior proceeding.

Despite my disagreement with the majority on the res judicata issue, I agree with the majority, for the reasons given in its decision, that the Personal Privacy Protection Law (Public Officers Law art 6-A) does not bar public disclosure of the contents of the investigative file. Thus, I concur in the reversal of Supreme Court's judgment and dismissal of the petition.

KANE and YESAWICH, JR., JJ., concur with MERCURE J.; MAHONEY, P. J., concurs in an opinion.

Judgment reversed, on the law, without costs, and petition dismissed.